UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DISTRICT

IN ADMIRALTY

ALL UNDERWRITERS SUBSCRIBING
TO CERTIFICATE OF INSURANCE
NUMBER 99B1/671 including SUBSCRIBING
UNDERWRITERS AT LLOYDS, LONDON,
AXA GLOBAL RISKS (U.K.) LIMITED "T" A/C,
And WURTEMBERGISCHE VERISCHERUNGAG
"T" A/C,

Case No.: 00-06058-CIV-DAVIS

     Plaintiffs,

vs.

H$_2$0 LIMITED,

     Defendant.

_____/

H$_2$0 LIMITED and MICHAEL B. KLINGENSMITH,

     Counter-Plaintiffs,

vs.

ALL UNDERWRITERS SUBSCRIBING
TO CERTIFICATE OF INSURANCE
NUMBER 99B1/671, etc.,

     Counter-Defendants,

and

C.A. HANSEN, a division of BROWN & BROWN, INC.
and TROPICAL DIVERSIONS YACHT SERVICES, INC.

     Third-Party Defendants.

_____/

MAY 0 2 2000

Rec'd in MIA Dkt _____

## ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM
## AND THIRD-PARTY COMPLAINT

Defendant H$_2$0 Limited answers Plaintiff's Complaint for Declaratory Relief herein as follows:

1.    Without knowledge;

2.    Without knowledge.

3.    Without knowledge as to Underwriters' status.  Otherwise, admitted.

4.    Admitted.

5.    Admitted.  In addition, Plaintiff Underwriters are obligated to provide up to $300,000.00 worth of Indemnity coverage and $5,000.00 in Medical Payments coverage.

6.    Denied.  The policy was never delivered in Fort Lauderdale.  However, Plaintiffs Underwriters should be estopped to deny coverage.

7.    Admitted that the policy so states on its face.  However, Defendants had requested coverage for and reasonably believed prior to the loss that the Vessels were insured for a total of $170,000.00.

8.    Admitted that the policy so states.  However, Defendants had requested and reasonably believed prior to the loss that coverage was for a total of $170,000.00.

9.    Admitted that "Novena" was partially submerged at the dock in Great Harbour, Bahamas due to Hurricane Floyd as of September 14, 1999.  Denied that the tender was not damaged.

10.    Admitted in part, denied in part.  Plaintiffs Underwriters did offer $155,000.00.  However, the offer was subject to unacceptable conditions, including

2

release of third parties for tortious conduct, and release of Plaintiffs from their liability for Indemnity and Medical Payments coverage, to which concessions Plaintiffs were not entitled. Moreover, Plaintiffs were not entitled to any deduction for the value of the tender, as their representatives abandoned the tender in the Bahamas and made no effort to recover or repair it.

11.    Admitted in part, denied in part. Plaintiffs overstated the damages and understated the value of the vessel for purposes of declaring a constructive total loss. The alternative offer of $114,901.00 understated the damage.

12.    Without knowledge.

13.    Admitted in part, denied in part. Defendant $H_2O$ demands that Plaintiffs pay $155,000.00 immediately and without condition, or that the Vessel be repaired and the tender returned to Florida.

## AFFIRMATIVE DEFENSES

A.    **Breach of Contract**. Plaintiffs Underwriters breached their contract of insurance with Defendant $H_2O$ Limited in one or more of the following respects:

1.    Failure to pay sums due under the policy, within 90 days of notice of the loss, and without improper conditions;

2.    Refusal to pay any amounts pursuant to the Indemnity coverage;

3.    Refusal to pay any amounts pursuant to the Medical Payments coverage; and

4.    Failure to provide the coverage requested of Plaintiffs' actual or apparent agent, C.A. Hansen.

**B.** **Actual or Apparent Agency/Estoppel.**    By telephone on July 1, 1999, and in person on July 7, 1999, Defendant H$_2$0 Limited, through its authorized representative, Defendant Michael Klingensmith, requested that C.A. Hansen renew prior coverage and increase the agreed value of the vessel to $170,000.00, to which C.A. Hansen agreed, with actual or apparent authority to bind Plaintiffs Underwriters. The request for increased coverage is documented by a handwritten notation by a representative of C.A. Hansen on at least one version of the Declarations Page, and H$_2$0 Limited reasonably relied upon this agreement to provide coverage in not seeking or obtaining alternative or additional coverage. C.A. Hansen failed to deliver the policy to Fort Lauderdale as instructed, and Defendant Klingensmith left on board "Novena" for the Bahamas on July 18, 1999, without receiving any notification that C.A. Hansen had failed to bind the agreed upon coverage. Defendant H$_2$0 Limited did not discover that the agreed value stated on the policy was only $155,000.00 until after the loss in September of 1999. Under these circumstances, Plaintiffs should be estopped to deny coverage for an agreed value of the Vessels of $170,000.00.

**C.** **Lack of Diligence/Undue Delay.**    Plaintiffs Underwriters, acting through their representatives in South Florida and the Bahamas, failed to exercise due diligence and good faith to either promptly repair and recover the Vessels or to timely compensate Defendant H$_2$0 Limited as insured and Defendant Klingensmith as third-party beneficiary, for all sums due under the policy. Accordingly, Plaintiffs should be estopped to deny responsibility for storage charges and salvage expenses to the extent

that they have been increased by acts or omissions occasioned by Plaintiffs' own representatives.

WHEREFORE, Defendants pray for judgment, determining that Defendants are entitled to be paid unconditionally and without further delay, and awarding their reasonable attorneys' fees and costs incurred herein, along with such other and further relief as the Court may deem appropriate.

**COUNTERCLAIM**
(Breach of Written Contract of Insurance)

Defendant $H_2O$ Limited and Defendant Klingensmith, as third-party beneficiary, sue Plaintiffs, and say:

1.      Plaintiffs have alleged that jurisdiction and venue for their claim properly lie in this Court.  If this is so, this Court may properly exercise supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. §1367(a), or alternatively, based on diversity of citizenship, under 28 U.S.C. §1332(a)(2).

2.      On or about July 7, 1999, Plaintiffs Underwriters (as collectively described in Plaintiff's Complaint), through their duly authorized representative, C.A. Hansen, issued a policy of insurance, a true and correct copy of which is attached and incorporated by reference as Exhibit "A" hereto.

3.      The coverage, effective July 9, 1999, covered one 1979 47-foot Vagabond sailboat, "Novena," ("Vessel") a 1991 24-foot Grumman pontoon boat, with engine, and Novena's tender, a 10-foot Zodiac inflatable, with engine (hereinafter collectively "Vessels").

4.     In addition, Plaintiffs bound themselves to provide Indemnity coverage up to a limit of $300,000.00 and Medical Payments coverage for up to $5,000.00.

5.     Although Defendant $H_2O$ Limited had requested an agreed value of $170,000.00, and reasonably believed based upon the actions of C.A. Hansen that coverage was bound for that amount, the agreed value for the Vessels stated on the face of the policy is only $155,000.00.

6.     On or about July 18, 1999, "Novena," skippered by Defendant Michael Klingensmith, a licensed United States Coast Guard Captain, left Fort Lauderdale for the Bahamas, with the pontoon boat in tow and the Zodiac secured aboard.

7.     On board were approximately $8,000.00 worth of ship's stores for an extended stay in the Bahamas, approximately $10,000.00 worth of spare parts, and personal property of Defendant Klingensmith valued at approximately $40,000.00.

8.     On or about September 13, 1999 while "Novena," the pontoon boat, and the Zodiac were at Great Harbour, Bahamas, and despite due diligence to protect the Vessels, Hurricane Floyd struck, causing "Novena" to sink at the dock, the Zodiac to be blown away, and the pontoon boat to be damaged.

9.     In addition, Defendant Michael Klingensmith was personally injured during the performance of his duties as Master of "Novena" in the aftermath of the Hurricane.

10.     Defendant Klingensmith immediately provided notice of the loss to Plaintiffs Underwriters, through their representatives C.A. Hansen, by amateur radio.

11.    Defendant Klingensmith was instructed by C.A. Hansen to stand by, and Plaintiffs Underwriters, through C.A. Hansen, subsequently engaged Tropical Diversions Yacht Services, Inc. to recover the Vessel or Vessels pursuant to the policy of insurance at issue in this case.

12.    Tropical Diversions caused and/or permitted substantially all of the ship's stores, spare parts, and personal property onboard "Novena" to be lost or stolen. The loss of these items of personal property, belonging to Defendant Klingensmith, give rise to a claim by Klingensmith against $H_2O$ Limited, for which Plaintiffs Underwriters are responsible pursuant to the Indemnity coverage under the subject policy.

13.    Plaintiffs Underwriters failed to take any steps to repair or recover the pontoon boat, which remains in storage in the Bahamas to this day. The pontoon boat is not suitable for crossing from the Bahamas under its own power, but only in tow.

14.    In addition, Plaintiffs Underwriters have wrongfully failed and refused to take any action with respect to $1,850.00 held by Great Harbour Marina from advance dockage fees paid by Defendant Klingensmith and Defendant $H_2O$ Limited, for alleged damage to its dock during Hurricane Floyd, for which Plaintiffs Underwriters have responsibility pursuant to the Indemnity coverage under the subject policy.

15.    Contrary to the terms of the policy of insurance, Defendant Klingensmith was also left abandoned in the Bahamas, to find his own way home, nor have Plaintiffs paid any sums by which Defendant Klingensmith could obtain necessary medical attention for his personal injuries sustained while serving as Master of the Vessel.

7

16.    Pursuant to request of marine surveyors engaged at the behest of Plaintiffs Underwriters, Defendant Klingensmith on behalf of Defendant $H_2O$ Limited provided on October 21, 1999 a written list itemizing to the extent possible the personal property lost and stolen.

17.    In addition, Defendant Klingensmith on behalf of Defendant $H_2O$ Limited submitted a sworn statement supporting claims against the policy to Plaintiffs Underwriters, by certified mail to C.A. Hansen on January 1, 2000.

18.    Notwithstanding the foregoing, Plaintiffs Underwriters have failed and refused to pay sums due under the policy of insurance, and have conditioned payment on Defendants' giving up any claims pursuant to Indemnity coverage and Medical Payments coverage, and the release of third parties including C.A. Hansen and Tropical Diversions Yacht Services, Inc., for tortious conduct, which conditions cannot properly be interposed as an excuse for payment under the policy or applicable law.

19.    Plaintiffs Underwriters have breached their contract of insurance with Defendant $H_2O$ Limited and third-party beneficiary Defendant Klingensmith by one or more of the following means:

(a)    Failure to make payments due under the policy within 90 days of notification of loss;

(b)    Imposing inappropriate conditions for any payments to be made under the policy;

(c)    Wrongfully denying coverage for Medical Payments;

(d)    Wrongfully denying coverage for Indemnity liability of Defendant H$_2$0 Limited;

(e)    Failing to either promptly recover and repair the Vessels, or to pay sums due for their loss;

(f)    Violating an implied duty to exercise good faith and due diligence in administering and processing of Defendants' claims.

21.    All conditions precedent to bringing this action have been performed, satisfied, or waived.

22.    Defendants have engaged the undersigned law firm to represent their interests in this action, and are obligated to pay its reasonable attorneys' fees, court costs, and other reasonable expenses incurred herein.

WHEREFORE, Defendants pray for judgment and prejudgment interest against Plaintiffs Underwriters for damages, prejudgment interest, costs of this action, attorneys' fees, and such other and further relief as the Court may deem appropriate in the circumstances.

## THIRD-PARTY COMPLAINT

Defendants H$_2$0 and Michael Klingensmith sue Third-Party Defendants C.A. Hansen, a division of Brown & Brown, Inc., ("C.A. Hansen") and Tropical Diversions Yacht Services, Inc., ("Tropical Diversions") and say:

1.    This Court may properly exercise subject matter jurisdiction over this third-party claim pursuant to 28 U.S.C. §1367(a).

2.      Both Third-Party Defendants are residents of the Southern District of Florida, so that venue is proper pursuant to 28 U.S.C. §1391(b).

3.      Defendant $H_2O$ Limited is a Delaware corporation and the owner of "Novena," a 47-foot Vagabond sailing vessel. Defendant $H_2O$ Limited also is or at all times material was owner of a 24-foot pontoon boat and a Zodiac inflatable tender.

4.      Defendant Michael Klingensmith is a licensed Coast Guard Captain and is or at all times material was Master of the Vessel "Novena."

5.      Defendant C.A. Hansen, upon information and belief, is a division of Brown & Brown, Inc., headquartered or otherwise doing business in the Southern District of Florida.

6.      Defendant Tropical Diversions, Inc. is or holds itself out to be a corporation doing business in and headquartered in the Southern District of Florida.

7.      Prior to July 9, 1999, Defendant $H_2O$ Limited had bound coverage for "Novena" and the Zodiac with Plaintiffs Underwriters, through Defendant C.A. Hansen.

9.      By telephone on July 1, 1999 and by a meeting in person in Fort Lauderdale on July 7, 1999, Defendant Klingensmith on behalf of Defendant $H_2O$ Limited requested that the agreed value for "Novena" be increased to $170,000.00, and that the coverage be extended to the pontoon boat.

10.     Defendant C.A. Hansen agreed to secure such coverage, and advised that Defendants would be advised later of the exact amount of the monthly premium.

11.     Contrary to Defendants' instructions, C.A. Hansen secured coverage for an agreed value of only $155,000.00, as reflected on the face of the policy attached as Exhibit "A" hereto, incorporated by reference.

12.     Defendants did not learn of this error at the time, because, contrary to Defendants' express instructions, the policy documentation was not mailed to the Vessel's address in Fort Lauderdale, but instead to a Post Office Box in Palm Beach County, where it did not arrive until after "Novena"'s departure from Fort Lauderdale to the Bahamas on July 18, 1999. Defendant Klingensmith's intended departure for an extended stay in the Bahamas was known to C.A. Hansen as of July 7, 1999.

13.     Defendants did not learn of C.A. Hansen's error with respect to the amount of coverage until after the loss.

14.     Defendant $H_2O$ Limited not only desired coverage to the extent of $170,000.00, but was ready, willing, and able to pay for same, had C.A. Hansen secured the coverage as directed.

15.     On or about September 14, 1999, while "Novena," the pontoon boat, and the Zodiac tender were at Great Harbour, Bahamas, "Novena" sank at the dock, the pontoon boat was damaged, and the Zodiac inflatable was lost, as a result to high winds and seas accompanying Hurricane Floyd.

16.     Notwithstanding the havoc caused by Hurricane Floyd, Defendants promptly notified Hansen of the loss by amateur radio, and were told by C.A. Hansen to stand by.

17.    Thereafter, C.A. Hansen engaged Defendant Tropical Diversions to recover "Novena" and its contents.

18.    Tropical Diversions caused or permitted substantially all of the contents of "Novena" to be lost or stolen.

19.    C.A. Hansen made no effort to return the pontoon boat or Klingensmith to Fort Lauderdale, and although Klingensmith was able with some difficulty to find his own way home, there was no practicable means to effect return of the pontoon boat, and it remains in the Bahamas to this day, incurring storage charges.

20.    All conditions precedent to this action have been performed, satisfied or waived.

### COUNT I
### (Negligence Against Third-Party Defendant C.A. Hansen)

21.    Defendants reallege the matters set forth in paragraphs 1 through 20 above.

22.    In undertaking to secure insurance coverage for Defendant $H_20$ Limited and in undertaking to recover the Vessels and administer the insurance claim by Defendant, C.A. Hansen assumed the duties of reasonable care and good faith in its dealings with Defendants.

23.    C.A. Hansen breached those duties in one or more of the following respects:

(a)    Failing to secure the coverage requested;

(b)    Failing to promptly notify Defendant $H_20$ Limited that the requested coverage had not been secured;

(c)     Failure to exercise due care in the selection and supervision of Tropical Diversions with respect to recovery operations;

(d)     Failure to promptly secure payment for Defendants of sums they are due to receive under the subject insurance policy.

24.     As a direct, proximate, and foreseeable result of Hansen's breach of its obligations to Defendants, they have suffered damages, including the value of any coverage which Defendants would have had but for the negligence of C.A. Hansen, the loss of use of monies to which Defendants were entitled, any additional storage, dockage, and transportation charges incurred by Defendants as a result of Hansen's wrongful acts and omissions which otherwise could have been avoided, and the loss of personal property belonging to Defendant Klingensmith.

WHEREFORE, Defendants pray for judgment against C.A. Hansen, a division of Brown & Brown, Inc., for damages, costs of this action, and such other and further relief as the Court may deem appropriate.

### COUNT II
#### (Negligence/Conversion Against Third-Party Defendant Tropical Diversions)

25.     Defendants reallege the matters set forth in paragraphs 1 through 20 above.

26.     On or about September 17, 1999 Third-Party Defendants C.A. Hansen engaged Third-Party Defendants Tropical Diversions to recover "Novena" and/or the pontoon boat.

27.    In undertaking these operations, Third-Party Defendants Tropical Diversions assumed a duty to Defendants of reasonable care and good faith.

28.    In breach of those obligations Third-Party Defendants Tropical Diversions, Inc. either intentionally, with willful disregard for the rights of Defendants, by simple negligence, or a combination thereof, caused or allowed personal property of Defendant Klingensmith to be lost and/or stolen.

29.    The personal property lost and/or stolen includes approximately $8,000.00 worth of ship's stores, $10,000.00 worth of spare parts, and $40,000.00 worth of other personal property, including electronic equipment, navigational equipment, charts, books, clothing, and personal effects.

30.    While seeking recovery of some of his person property, Defendant Klingensmith became the victim of a criminal assault and death threats by an agent or employee of Tropical Diversions.

31.    In addition, Tropical Diversions left Defendant Klingensmith and the pontoon boat stranded at Great Harbour Island in the Bahamas, with no reasonably practicable means of returning to the mainland.

32.    As a direct, proximate, and foreseeable result of Tropical Diversions' wrongful acts and omissions, Defendants H₂0 Limited and Klingensmith have suffered damages including but limited to the effective loss of the pontoon boat, or otherwise unnecessary storage charges therefor, transportation costs and the fair market value of Defendant Klingensmith's personal property at the time of loss and/or theft.

WHEREFORE, Defendants $H_2O$ Limited and Klingensmith pray for judgment against Defendant Tropical Diversions Yacht Services, Inc. for damages, costs of this action, and such other and further relief as the Court may deem appropriate in the circumstances.

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. Mail to: Farris J. Martin, III, Esquire, Attorneys for Plaintiffs, KELLER & HOUCK, P.A., 200 South Biscayne Boulevard, Suite 3460, Miami, Florida 33131-5308, Michael B. Klingensmith, Agent for $H_2O$, Ltd., P.O. Box 30441, Palm Beach Gardens, Florida 33420, C.A. Hansen, 5900 N. Andrews Avenue, Ste. 900, Fort Lauderdale, Florida 33309, this 27th day of April, 2000.

JENNINGS & VALANCY, P.A.
Attorneys for Defendants
$H_2O$ and Klingensmith
311 Southeast 13th Street
Ft. Lauderdale, Florida 33316
(954) 463-1600 Telephone
(954) 463-1222 Telecopy

By: _____
Robert L. Jennings
Florida Bar No. 348074

COVER NOTE NO. 99B1/671 (C)

## C. A. Hansen

A Division of Brown & Brown, Inc
5900 N Andrews Ave., Suite 900
FT Lauderdale, FL 33309
(954) 776-2222

### MARINE INSURANCE

The following insurance has been arranged by our correspondent broker in
London for

| | |
|---|---|
| Hull Value: | $155,000. |
| x Rate % 1.35 | $2,092. |
| Basic PI | $250. |
| Crew Charge | $ |
| Med Pay | $ |
| TENDER | $81. |
| | $. |
| | $ |
| Subtotal | $2,558. |
| Col.Com.%1.000 | $26. |
| Premium Total | $2,584. |
| | H2OLI-1 |

**Account of**   H2O, Limited

**Address**   1013 Centre Road
Wilmington, DE 19899

**Loss, if any, payable to**   Assured or Order

**Policy Period: From**   07/09/99 Noon, EST To 07/09/00 Noon, EST

**Upon The**   1979 47' Vagabond Sail        **Yacht:**   "NOVENA"

**Annual Premium:**   $2447.00

**Conditions: As per Hansen Yacht Form Attached**

| | | |
|---|---|---|
| Amount of Insurance on Hull and Machinery: | $ | 155,000. |
| Amount of Insurance on Increased Value: | $ | 0. |
| Agreed Value: | $ | 155,000. |
| Deductible, as per Deductible Clause: | $ | 4,560. |
| Limits of Protection and Indemnity Insurance: | $ | 300,000. |
| Limits of Medical Payments Insurance: | $ | 5,000. |

Warranted by the Assured that the said vessel shall be laid up and out of commission: Nil. All Year In Commission.

Navigation Limits: Confined to the inland and coastal waters of Florida and Bahamas. Warranted not South of the Tropic of Cancer between June 1 and October 31, both days inclusive.

Special Conditions: Partial Loss Clause/Actual Cash Value, $5,000. Uninsured Boater, Tender/Motor and Premium Finance Endorsement attached.

New York Suable Clause, Millennium Clause
The total liability of the Underwriters in the aggregate for any loss or losses sustained by any or all of the interests during the policy period shall not exceed the amount for which Underwriters would be liable had such a loss or losses been sustained by any one of the interests alone.

Underwriters:
12.15% Axa Global Risks (UK) Ltd. "T" A/C
  2.43% Wurttembergische Versicherung AG "T" A/C
Total: 14.58% . Part of 100% of Amounts and Values

C. A. Hansen

Unless specifically included herein, warranted free of capture, seizure, and detention, and the consequences thereof or any attempt thereat, piracy included, and also from all consequences of hostilities or warlike operation, whether before or after declaration of war. The subscribing insurer's obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligation.

By acceptance of this Cover Note the insurers named herein agree that, upon default in payment of premium or any installment thereof when due, C.A. Hansen are authorized by them to cancel this insurance, also that all losses and/or returns under these and/or any other policies effected and/or payable in whole or in part to the same interests on this or any other properties shall first be payable to C.A. Hansen, Ft. Lauderdale to the extent of all indebtedness then due and unpaid to them.

# HANSEN YACHT FORM

## WARRANTIES AND GENERAL CONDITIONS
### (Applicable to all coverages unless otherwise indicated.)

**Privileges**

In port and at sea, under power or sail, in docks and graving docks, in hauling and launching, and on ways, gridirons, pontoons, and on shore, and while being transported. With leave to sail with or without pilots to tow and assist vessels or craft in all situations and to be towed.

**Private Pleasure Warranty**

Warranted to be used solely for private pleasure purposes and not to be hired or chartered unless approved and permission endorsed hereon.

**Continuation Clause**

If the vessel insured hereunder is at sea, at the expiration of this policy, the risk may be continued until the arrival of the vessel at her port of destination on her being moored therein twenty-four (24) hours in good safety, provided notice be given to the Assurers and additional premium paid as required.

**Transfer of Interest**

This insurance shall inure to the benefit only of the named assured and shall be void in case this Policy or the interest insured thereby shall be sold, assigned, transferred or pledged without the previous consent in writing of these Assurers.

**Personal Negligence**

Personal negligence or fault of the Owner or Assured in the navigation of the yacht or privity or knowledge in respect thereto (excepting loss, damage or liability willfully or intentionally caused by the Owner or Assured) shall not relieve the Assurers of liability under this Policy.

**Other Insurance**

If a named Assured has other insurance against a loss covered by any section of this Policy, the Assurers shall not be liable under this Policy for a greater proportion of such loss than the applicable amount stated bears to the total amount of all valid and collectable insurance against such loss. If an Assured other than a named Assured has other insurance against a loss covered by any section of this Policy, this insurance shall be excess over such insurance.

**Notice of Loss and Filing of Proof**

It is agreed by the Assured to report immediately to the Assurers or to their representative who shall have issued this policy every occurrence which may become a claim under this policy and afford to the Assurers, if they deem it desirable, an opportunity to appoint surveyors and/or investigators prior to any repairs being undertaken; Assureds shall also file with the Assurers and/or their representatives a detailed sworn Proof of Loss, proof of interest and in a case of partial loss, receipted bills as soon as practicable following the date of loss.

**Payment of Loss**

In case of loss payable under this policy, such loss to be paid by Assurers within 90 days after receipt by the Assurers and/or their representative who issued this policy, satisfactory proof of loss, proof of interest in the property insured and in the event of partial loss, receipted bills, all indebtedness of the Assured being first deducted.

**Subrogation**

Upon making payment under this policy the Assurers shall be vested with all of the assured's rights of recovery against any person, corporation, vessel or interest and the Assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

Any agreement, contract or act, past or future, expressed or implied, by the Assured whereby any right of recovery of the Assured against any vessel, person or corporation is released, decreased, transferred or lost which would, on payment of claim by the Assurer, belong to the Assurer but for such agreement, contract or act shall render this policy null and void as to the amount of any such claim, but only to the extent and to the amount that said agreement, contract or act releases, decreases, transfers, or causes the loss of any right of recovery of the Assurer, but the Assurer's right to retain or recover the full premium shall not be affected.

**Time for Suit Against the Assurers**

No suit or action on this Policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Policy, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that were such limitation of time is prohibited by the laws of the state wherein this Policy is issued, then, and in that event, no suit or action under this Policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state.

**Action Against the Assurers**

Any person or organization or the legal representative thereof who has secured judgement against the Assured shall be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. Bankruptcy or insolvency of the Assured or of the Assured's estate shall not relieve the Assurers of any of their obligations hereunder.

**Legal Representation and Cooperation Clause**

The Assured shall cooperate with the Assurers and shall not assume any obligation, admit any liability or incur any expense for which the Assurers may be liable, without the written approval of the Assurers, except as may be necessary and permitted to safeguard the Yacht under the "SUE AND LABOR" clause in section "A" of this Policy. In case the liability of the Assured shall be contested with the written approval of the Assurers first obtained, the Assurers will pay the cost and expense of such defense, in which event the Assurers shall have the option of naming the attorneys who shall represent the Assured in said defense, and, if such option is exercised, shall have the direction and control thereof. The Assured shall, whenever required, attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits and limitations proceedings.

**Examination Under Oath**

The Assured, as often as may be reasonably required, shall exhibit to any person designated by the Assurers all that remains of any property herein described, and shall submit, and in so far as is within his or their power cause his or their employees, members of the household and others to submit to examinations under oath by any person named by the Assurers and subscribe the same; and as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Assurers or their representative, and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of the Assurers or any of their employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Assurers might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to the Assurers' liability.

**Misrepresentation or Fraud**

This entire Policy shall be void if the Assured or their representative has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Assured therein, or in case of fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof whether before or after a loss.

**Notice of Cancellation and Return Premiums for Cancellation**

This Policy may be cancelled by the Assured by surrender thereof to the Assurers or their representative by mailing to the Assurers or their representative written notice stating when therafter such cancellation shall be effective. This Policy may be cancelled by the Assurers or their representative by mailing to the Assured at the address shown in this Policy or last known address, written notice stating when not less than ten (10) days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall become the end of the Policy period. Delivery of such written notice either by the assured or by the Assurers or their representative shall be equivalent to mailing.

If the Assured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Assurer cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is affected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Assurers' or their representative's check mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Assured.

**Premium Fully Earned**

There shall be no return of premium under any section of this Policy if the insured yacht is a total or constructive total loss by a peril insured against.

## PARAMOUNT EXCLUSIONS

Warranted free from any claim for loss, damage or expense caused by or resulting from capture, seizure, arrest, restraint or detainment or the consequences thereof or of any attempt thereat or any taking of the vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; also from all consequences of hostilities or warlike operations (whether there be a declaration of war or not) but the foregoing shall not exclude collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power, and for the purpose of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power; also warranted free, whether in time of peace or war, from all loss, damage or expense caused by any weapon or war employing atomic or nuclear fission and/or other fusion or other reaction or radioactive force or matter.

Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom. If, however, war risks are hereafter insured by endorsement on the policy, such endorsement shall supersede the above exclusions only to the extent that their terms are inconsistent and only while such war risks endorsement remains in force.

This Policy is made and accepted subject to the foregoing stipulations and conditions, and to the conditions on the following pages which are hereby specially referred to and made a part of this Policy, it being understood and agreed that in the case of any conflict or inconsistency the foregoing provisions shall prevail over those which follow; provided, however, that with respect to any insurance under Section "E" of this Policy, the liability of the Assurers for the term above stated shall be in all respects as provided in such Section "E", unaffected by any other condition or provision of this Policy.

## SECTION "A" — HULL INSURANCE

**Property Covered**
Upon the Hull, Spars, Sails, Fittings, Gear and Equipment, Apparel, Provisions, Stores, Machinery, Boats and other Furniture and Furnishings of and in the yacht hereby insured, subject to all of the terms and conditions (including the Running Down Clause) of this Policy. The foregoing does not include fishing tackle, moorings, firearms, jet skis, land vehicles, aircraft, windsurfers, or personal property.

## COVERAGE

The insurance provided by this Section covers, SUBJECT TO THE EXCLUSIONS AND LIMITATIONS OF THIS POLICY, against physical loss or damage to the property covered from any external cause, as well as physical loss or damage directly caused by fire, explosions, bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull (excluding the cost and expense of repairing or replacing any defective part), provided such loss or damage has not resulted from want of due diligence or intentional act by the owners of the Yacht or by the Assured; provided always that the amount recoverable hereunder shall not exceed the amount of insurance.

**Deductible Clause**
When a deductible amount is stated on this Policy, each claim for loss or damage covered under Section "A" shall be adjusted separately and from the aggregate amount of each separately adjusted claim, the sum so stated shall be deducted. Such deduction shall not apply in the event of Total Loss or Constructive Total Loss of the vessel nor shall it apply with respect to claims under the Running Down Clause.

**Equipment Separated and on Shore**
It is also agreed that should any part of the furniture, boats or other property of the said yacht be separated and laid up on shore during the life of this Policy, then this Policy shall cover the same to an amount not exceeding 50% of the sum stated under the heading "Amount of Insurance". The amount attaching on the said yacht shall be decreased by the amount so covered.

**Valuation Clause**
The said yacht, for so much as concerns the Assured by agreement between the Assured and the Assurers is and shall be valued at the amount stated under the heading "Agreed Valuation".

**Partial Loss**
In the event of partial loss or damage, cost of repairs to be paid without deduction, new for old, except with respect to sails and covers of canvas or other like material; the Assurers shall be liable for no more than the cost of repair or a reasonable value, whichever is less.

**Constructive Total Loss**
No recovery for a constructive total loss shall be had hereunder unless the expense of recovering and repairing the vessel shall exceed the amount of insurance on hull and machinery.

**Unrepaired Damage**
In no case shall the Assurers be liable for unrepaired damage in addition to a subsequent total loss sustained during the term covered by this Policy.

**Proportion of Loss Covered**
Where the amount of insurance as set forth is less than the agreed valuation stated herein, the Assurers shall be liable only for such proportion of any loss recoverable under this Section as the said amount of insurance bears to the said agreed valuation.

**Strikes Clause**
This insurance also covers loss of or damage to the property hereby insured caused by strikers, locked out workmen or persons taking part in labour disturbances, riots or civil commotions or caused by vandalism or persons acting maliciously.

**Tenders**
The tenders of the yacht are insured subject to all of the terms and conditions, including the Running Down Clause, of this Policy.

**Running Down Clause**
And it is further agreed that if the yacht hereby insured shall come into collision with any other ship or vessel, and the Assured shall, in consequence thereof, become liable to pay, and shall pay by way of damages to any other person or persons, any sum or sums not exceeding in respect of any one such collision the value of the yacht hereby insured, we, the Assurers, will pay the Assured such sum or sums so paid up to the amount hereby insured. And in cases where the liability of the Assured has been contested, with the consent, in writing, of the Assurers, we will also pay the costs thereby incurred or paid; but when both vessels are to blame, then unless the liability of the owners of one or both of such vessels becomes limited by law, claims under the Collision Clause shall be settled on the principle of CROSS LIABILITIES, as if the owners of each vessel had been compelled to pay to the owners of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such collision; and it is further agreed that the principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, if the parties agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the managing owners of both vessels, and one to be appointed by the majority in amount of Underwriters interested in each vessel; the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single, or of any two of such three Arbitrators, appointed as above, to be final and binding.

Provided always that the foregoing clause shall in no case extend to any sum which the Assured may become liable to pay, or shall pay for removal of obstructions under statutory powers, for injury to harbors, wharves, piers, stages, and similar structures, consequent on such collisions, or in respect of the cargo or engagements of the insured yacht, or for loss of life, or personal injury.

**Members of Assured's Family**
It is understood and agreed that the word "Assured" shall include, in addition to the named Assured hereunder, irrespective of interest in the insured yacht, the members of the immediate family of the Assured, who may be operating the yacht with the prior permission of the Assured.

**Sue and Labor Clause**
And in case of any loss or misfortune, it shall be lawful and necessary for the Assured, their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said yacht or any part thereof, without prejudice to this insurance; the charges whereof we, the Assurers, will pay. And it is especially declared and agreed that no acts of the Assurer or Assured in recovering, saving or preserving the property insured shall be considered as a waiver or estoppel of any provision of this policy or acceptance of abandonment.

This insurance does not cover:

1. Any loss or damage directly or indirectly caused by or resulting from wear and tear, gradual deterioration, inherent vice, marine borers, vermin, electrolysis, or osmosis.

2. Theft or mysterious disappearance of equipment or accessories, other than tenders and their motors, unless occurring in conjunction with theft of the entire yacht or unless there be visible evidence of forcible entry.

3. Any loss, damage or expense directly or indirectly caused by or in consequence of ice and/or freezing.

4. Any loss, damage or expense directly or indirectly caused by or in consequence of faulty construction and/or improper design.

5. Any loss or damage to electrical apparatus, including wiring, directly or indirectly caused by electricity, other than lightning, unless fire ensues and then only for loss or damage by such ensuing fire.

6. Wages and/or provisions.

7. Mechanical breakdown or derangement of machinery.

8. Any loss of use, demurrage or charter hire to the yacht insured hereunder.

9. Any losses or damages directly or indirectly caused by or in consequence of the wilful or intentional acts of the Assured or negligence of the Assured in maintaining the vessel, whether ashore or afloat.

## SECTION "B" — PROTECTION AND INDEMNITY INSURANCE

If the Assured shall by reason of his interest in the insured yacht become liable to pay and shall pay any sum or sums in respect of any responsibility, claim, demand, damages, and/or expense or shall become liable for any other loss arising from or occasioned by any of the following matters or things during the currency of this Policy in respect of the yacht hereby insured, that is to say:—

**Property Damage** (I) Loss of or damage to any other ship or boat or goods, merchandise, freight or other things or interest whatsoever, on board such other ship or boat, caused proximately or otherwise by the yacht insured in so far as the same would not be covered by the Running Down Clause in Section "A" of this Policy, except that if this Policy is subject to a Deductible Average the amount deductible from claims under the said Running Down Clause shall not be recoverable hereunder;

Loss of or damage to any goods, merchandise, freight or other things of interest whatsoever other than as aforesaid, whether on board said yacht or not, which may arise from any cause whatever;

Loss or damage to any harbor, dock (graving or otherwise), slipway, way, gridiron, pontoon, pier, quai, jetty, stage, buoy, telegraph cable, or other fixed or movable thing whatsoever, or to any goods or property in or on the same, however caused;

Any attempted or actual raising, removal or destruction of the wreck of the insured ship or the cargo thereof, or any neglect or failure to raise, remove or destroy the same;

The Assurers will pay the Assured such sum or sums so paid, or which may be required to indemnify the Assured for such loss; PROVIDED always that the amount recoverable hereunder in respect to any one accident or series of accidents arising out of the same event shall not exceed the sum stated under Limit of Protection and Indemnity Insurance.

**Bodily Injury** (II) Loss of life, illness, or bodily injury and payments made on account of life salvage;

The Assurers will pay the Assured such sums so paid or which may be required to indemnify the Assured for such loss; PROVIDED always that the liability of these Assurers is limited to the sum stated under Limit of Protection and Indemnity Insurance, and subject to the same limit for each person, it being understood that this limit applies to any one accident or series of accidents arising out of the same event.

**Costs** (III) And in case the liability of the Assured shall be contested in any suit or action with the consent in writing of these Assurers, we will also pay such ensuing costs as the Assured may incur as a result of such suit or action.

**Aggregate Limit** The total amount recoverable under the Protection and Indemnity Insurance coverage of this Policy, for all losses, including property damage, personal injury, loss of life, payments made on account of life salvage, and costs, resulting from any accident or series of accidents arising out of the same event, shall not exceed, in the aggregate, the sum stated under Limit of Protection and Indemnity Insurance.

**Pollution** This Policy does not insure against any loss, damage, cost, liability, or expense, imposed on the Assured, arising out of the discharge, dispersal, release, or escape of oil, fuel, chemicals, waste materials, or other pollutants, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

**Members of Assured's Family** It is understood and agreed that the word "Assured" whenever used in this Section shall include, in addition to the named Assured hereunder, irrespective of interest in the insured yacht, the members of the immediate family of the Assured, domiciled with the Assured, who may, at the time liability was incurred, be operating the yacht with the prior permission of the Assured.

**Exclusions** The Assurers will not be liable for:

1. Any fine, or penalty or assessment against the Assured or yacht named herein, by any national, state or local government;

2. Liability of any charterer of the yacht named herein;

3. Any liability assumed by the Assured under any contract or agreement unless specifically endorsed hereon.

4. Any liability while the vessel is being transported on land.

5. Any liability arising out of the ownership or use of any property not covered under Section A.

6. Any liability for bodily injury including but not limited to loss of life, illness or bodily injury, and payments made on account of life salvage of any Assured caused by or resulting from any action, negligence, malfeasance or misfeasance, whether intentional or unintentional, of a co-insured whether said co-insured is a spouse, parent, son or daughter, or an unrelated individual or company; or to any property damage or loss sustained by any Assured caused by or resulting from any action, negligence, malfeasance, misfeasance, whether intentional or unintentional, of a co-insured whether said co-insured is a spouse, parent, son or daughter, or an unrelated individual or company.

## SECTION "C" — OMNIBUS CLAUSE

is understood and agreed that the word "Assured" whenever used in the Running Down Clause in Section "A" — Hull Insurance, of this Policy, and whenever ed in Section "B" — Protection and Indemnity Insurance of this Policy, includes in addition to the named Assured any person, firm, corporation or other egal entity who may be operating the vessel with the prior permission of the named Assured, but does not include a charterer or a paid Master or a paid member of the crew of the insured vessel or a person, firm, corporation or other legal entity, or any agent or employee thereof, operating a shipyard, boat repair yard, marina, yacht club, sales agency, boat service station, or similar organization. Notwithstanding anything contained herein, the insurance provided by this clause does not cover liability of such additional Assureds to the Assured and/or Assureds named in this Policy. This insurance is conditioned upon compliance by an Assured with all the terms, conditions and warranties applicable to the named Assured. Nothing contained herein shall be construed to increase the limits of the Assurers' liability as stated in this Policy.

## SECTION "D" — MEDICAL PAYMENTS INSURANCE

The Assurers agree to pay to or for each person who sustains bodily injury caused by accident occurring during the Policy period, while in or upon, boarding or leaving the yacht insured hereunder, the reasonable expense of necessary medical, surgical, ambulance, hospital and professional nursing services and, in the event of death resulting from such injury, the reasonable funeral expense, all incurred within one (1) year from the date of accident, subject to the following conditions:

**Limit of Liability**  Notwithstanding the foregoing, the Assurers shall not be liable hereunder for any expense or combined expenses incurred in excess of that stated, as a result of any one accident or series of accidents arising out of the same event.

**Exclusions**  The coverage afforded shall not apply:

(1)  To bodily injury to or death of any person:

    (a)  To or for whom benefits are payable under any Workmen's Compensation or under the Federal Longshoremen's and Harbor Workers' Compensation Act;

    (b)  Who is a trespasser in or upon or boarding or leaving the insured yacht;

    (c)  Who is an employee of the Assured while engaged in the employment of the Assured except those in domestic service for whom no benefits are payable or required to be provided under any Workmen's Compensation Law;

(2)  To liability assumed by the Assured under any contract or agreement;

(3)  While the yacht is being used for other than private pleasure purposes;

(4)  To death of the Assured or registered owner of the yacht;

(5)  To bodily injury to the Assured or registered owner of the yacht, unless in excess of any other medical payments insurance collectible.

**Medical Reports; Proof and Payment of Claim**  As soon as practicable, the injured person or someone on his behalf shall give the Assurers written proof of claim, under oath if required, and shall, after each request from the Assurers, execute authorization to enable the Assurers to obtain medical reports and copies of records.

The injured person shall submit to physical examination by physicians selected by the Assurers when and as often as the Assurers may reasonably require.

The Assurers may pay the injured person or any persons or organizations rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute admission of liability of the Assured, or, except hereunder, of the Assurers.

## SECTION "E" — FEDERAL LONGSHOREMEN'S AND HARBOR WORKERS' COMPENSATION INSURANCE

The Assurers agree to insure under this Section for the term of the policy as stated, any liability of the Assured in respect of the insured yacht which shall arise under the United States Longshoremen's and Harbour Workers' Compensation Act, U. S. Code (1946) Title 33, Sections 901-49, and all laws amendatory thereof or supplementary thereto which may be or become effective while this Section of the Policy is in force.

## SECTION "F" — SERVICE OF SUIT

**SERVICE OF SUIT CLAUSE.** It is agreed that in the event of the failure of the Assurers to pay any amount claimed to be due hereunder, the Assurers, at the request of the Assured (or Reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that service of process in such suit may be made upon: Mendes & Mount, 3 Park Ave., New York, N.Y. 10016, that in any suit instituted against any one of them upon this contract, the Assurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The named are authorized and directed to accept service of process on behalf of the Assurers in any such suit and/or upon the request of the Assured (or Reinsured) to give a written undertaking to the Assured (or Reinsured) that they will enter a general appearance upon the Assurers' behalf in the event such a suit shall be instituted. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Assurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

This Clause shall be paramount and shall override anything contained in this insurance inconsistent herewith. In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

    (1).  ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    (2).  the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    (3).  any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

It is a provision of this Radioactive Contamination Exclusion Clause that:

If fire is an insured peril and where the subject matter insured is within the U.S.A., its islands, on shore territories or possessions and a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1 and 2 of this Radioactive Contamination Exclusion Clause; any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, excluding however any loss, damage, liability or expense caused by nuclear reaction, nuclear radiation contamination arising directly or indirectly from that fire.

SE. 1. OCT. 1999 11:25  CAWLEY WARREN FAX DEPT.  FAX NO. 954 493 9730

954 493 9730

COVER NOTE NO. 99B1/671 (L)

# C. A. Hansen

A Division of Brown & Brown, Inc
5900 N Andrews Ave., Suite 900
FT Lauderdale, FL 33309
(954) 776-2222

| | |
|---|---|
| Hull Value: | $155,000. |
| x Rate % 1.35 | $2,093. |
| Basic PI | $250. |
| Crew Charge | $ |
| Med Pay | $ |
| TENDER | $31. |
| | $ |
| | $ |
| Subtotal | $2,558. |
| Col.Com.%1,000 | $26. |
| Premium Total | $2,584. |

## MARINE INSURANCE

The following insurance has been arranged by our correspondent broker in London for

Account of   H2O, Limited                                                    H2OLI-1
              1013 Centre Road
Address       Wilmington, DE 19899

Loss, if any, payable to   Assured or Order

Policy Period: From   07/09/99  Noon, EST To 07/09/00  Noon, EST

Upon The   1979 47' Vagabond Sail                    Yacht:   "NOVENA"

Annual Premium:   $2447.00

Conditions: As per Hansen Yacht Form Attached
Amount of Insurance on Hull and Machinery:        $        155,000.
Amount of Insurance on Increased Value:           $              0.
Agreed Value:                                     $        155,000.
Deductible, as per Deductible Clause:             $          4,560.
Limits of Protection and Indemnity Insurance:     $        300,000.
Limits of Medical Payments Insurance:             $          5,000.

Warranted by the Assured that the said vessel shall be laid up and out of commission: Nil.  All Year In Commission.

Navigation Limits: Confined to the inland and coastal waters of Florida and Bahamas.  Warranted not South of the Tropic of Cancer between June 1 and October 31, both days inclusive.

Special Conditions: Partial Loss Clause/Actual Cash Value. $5,000. Uninsured Boater, Tender/Motor and Premium Finance Endorsement attached.
New York Suable Clause. Millennium Clause.
The total liability of the Underwriters in the aggregate for any loss or losses sustained by any or all of the assureds during the policy period shall not exceed the amount for which Underwriters would be liable had such a loss or losses been sustained by any one of the assured alone.
Underwriters:
Lloyds 85.42 %                    Part of 100% of Amounts and Values

                                              C. A. Hansen

99B1/671

Unless specifically included herein, warranted free of capture, seizure, and detention, and the consequences thereof or any attempt thereat, all piracy included, and also from all consequences of hostilities or warlike operations, whether before or after declaration of war. The subscribing insurer's obligations under any such of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.
By acceptance of this Cover Note the interests named herein agree that, upon default in payment of premium or any installment thereof when due, C.A. Hansen are authorized by them to cancel this insurance; also that all losses and/or returns under these and/or any other policies effected and/or payable in whole or in part in the same interests on this or any other properties shall first be payable to C.A. Hansen, FL Lauderdale to the extent of all indebtedness then due and unpaid to them.

RECEIVED TIME 30. SEP.  18:34          PRINT TIME 30. SEP.  18:38

SEP-30-99 THU 12:45 PM   CRAWLEY WARREN FAX DEPT.   FAX NO. 954 493 9730   P. 9
954 493 9730

# ~ C. A. Hansen ~

| Attached to and forming part of: 99B1/671 | Company: Lloyd's and other British Companies | Endt. No.: 04 |
|---|---|---|
| Insured: H2O. Limited | Effective Date: 07/09/99 | Expiration Date: 07/09/00 |

## PREMIUM FINANCE ENDORSEMENT

It is hereby understood and agreed that:

Imperial Premium Finance, Inc.
1200 Abernathy Rd. Bldg. 600, Suite 500
Atlanta, GA 30328-5661

is added to the loss payable clause in respect of Total Loss and/or Constructive Total Loss or cancellation.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

_____

1. OCT. 1999 11:26 PM   CRAWLEY WARREN FAX DEPT.   FAX NO. 954 493 9730   NO. 2942   P. 10/00

954 493 9730

## *C. A. Hansen*

| Attached to and forming part of: 9931/671 | Company: Lloyd's and other British Companies | Endt. No.: 01 |
|---|---|---|
| Insured: E.O. Limited | Effective Date: 07/09/99 | Expiration Date: 07/09/00 |

'NOVENA'

### PARTIAL LOSS CLAUSE AMENDMENT (a)

Where coverage has been afforded by reference in the policy schedule to Personal Effects, and where applicable to Inflatable dinghies, Outboard motors, Electronic equipment, Sails, Standing and Running rigging and Canvas covers when such items are in excess of (2) years of age, Insurers are entitled, at their discretion, to deduct an amount not exceeding one third (1/3) new for old of the cost of any comparable replacement item in addition to the applicable deductible as stated in the policy schedule.

### ACTUAL CASH VALUE ENDORSEMENT (ENGINES)

It is hereby understood and agreed that as respects partial loss or damage covered under this policy to the engine or engines, (such items being included in the value of the vessel) the following shall apply:

Such property shall be valued at the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper allowance for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality, The Section "A" deductible shall apply to all losses.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

*C.A. Hansen*

| Attached to and forming part of: 99B1/671 | Company: Lloyd's and other British Companies | Endt. No.: 02 |
| Insured: H2O, Limited | Effective Date: 07/09/99 | Expiration Date: 07/09/00 |

"NOVENA"

## UNINSURED BOATER

1. **PERILS INSURED AGAINST:** We will pay the damages which, because of bodily injury received aboard your yacht, you are legally entitled to recover from the uninsured owner or operator of another yacht.
   "Uninsured boater" and "uninsured owner or operator" mean an owner or operator of a yacht other than the yacht named in this policy who is legally responsible for the accident, and;
   a. to whom no liability policy applies; or
   b. who cannot be identified (such as a hit and run operator).

2. **EXCLUSIONS:** We do not provide Uninsured Boater coverage:
   a. for claims settled without our written consent;
   b. if the uninsured yacht is owned by a governmental agency or unit;
   c. for yachts owned by or furnished for the regular use of you, a member of your immediate family, or any person insured by this policy;
   d. for an insured using a yacht without permission, or
   e. when the yacht named in this policy is being chartered
   f. where no evidence of physical contact exists between your yacht and an unidentified yacht or where no evidence of physical contact exists between your yacht and an uninsured yacht.
   This coverage will not apply directly or indirectly to the benefit of any insurer under any state or federal compensation law or act.
   Payment made for this coverage to or for an insured person will reduce the amount that person is entitled to recover from the liability coverage of this policy.

3. **AMOUNT OF INSURANCE:** The amount shown for Uninsured Boater Coverage on the Declarations Page is the most we will pay under Coverage, regardless of the number of insured persons, claims made, or yachts involved in any one accident or series of accidents arising out of the same event.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

*C. A. Hansen*

| Attached to and forming part of:<br>9991/671 | Company:<br>Lloyd's and other British Companies | Endt. No.:<br>03 |
|---|---|---|
| Insured:<br>H2O. Limited | Effective Date:<br>07/09/99 | Expiration Date:<br>07/09/00 |

"NOVENA"

## TENDER AND MOTOR ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed coverage is extended to include the following:

1991 24' Grumman with
1996 40 HP Susuki total value $6,000.

The insurance on "NOVENA" being reduced proportionately.

Warranted a deductible of $ 250. is applicable to each and every claim

**ALL OTHER TERMS AND CONDITIONS
OF THE POLICY REMAIN UNCHANGED**